J-S01005-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KAMRAN SALEEM | : | |
| | : | |
| Appellant | : | No. 800 MDA 2021 |

Appeal from the Judgment of Sentence Entered June 4, 2021
In the Court of Common Pleas of Adams County Criminal Division at
No(s):  CP-01-CR-0000698-2020

BEFORE:   BOWES, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.:                **FILED: APRIL 13, 2022**

Kamran Saleem appeals from his June 4, 2021 judgment of sentence of thirty to sixty months of incarceration followed by three years of probation, which was imposed after a jury found him guilty of possession of child pornography, dissemination of child pornography, and criminal use of a communication facility.  We affirm.

We glean the factual history of this case from the certified record and the transcripts of testimony.  On March 16, 2020, Detective Eric Beyer of the Adams County District Attorney's Office received a tip from the National Center for Missing and Exploited Children ("NCMEC") that a verified Facebook account bearing Appellant's name and likeness had shared a video depicting

_____

[*] Retired Senior Judge assigned to the Superior Court.

a nine-year-old male child being raped by an adult male.[1] One of Appellant's profile pictures on Facebook was included in this report, which depicted him standing in front of a white 2018 Toyota. Detective Beyer determined this picture had been uploaded to Facebook over the Internet service associated with a gas station located at 243 Steinwehr Avenue in Gettysburg, Pennsylvania. Following surveillance and additional investigation, Detective Beyer confirmed Appellant worked at the gas station and drove the vehicle shown in his Facebook profile picture.

Based upon this information, Detective Beyer applied to a magisterial district judge ("MDJ") for a search warrant covering the gas station, the vehicle, and Appellant's person, which would permit "[t]he seizure and off-site forensic examination of all data contained within any cellular telephones and mobile electronic devices, including tablet or laptop computers, owned, used, and/or possessed by [Appellant]."[2] Application for Search Warrant, 6/24/20, at 1; Affidavit of Probable Cause, 6/24/20, at ¶¶ 6-8. The description of the items to be searched also incorporated Detective Beyer's affidavit of probable cause, wherein he indicated that any electronic devices seized pursuant to the

---

[1] As Detective Beyer explained in his affidavit of probable cause, a Facebook profile is "verified" when a user confirms the veracity of their contact information by submitting "verification codes" in response to "emails or text messages" sent by Facebook.

[2] In addition to the facts set forth above, Detective Beyer also provided a lengthy account of his training and experience as a law enforcement officer.

warrant would only be searched for "property, evidence, and instrumentalities" related to the allegations that Appellant had possessed and disseminated child pornography. *See* Affidavit of Probable Cause, 6/24/20, at ¶ 7. The affidavit also provided that such examination would be undertaken by "trained personnel using forensic examination software." *Id*. at ¶ 6, 8. After the MDJ approved the application, Detective Beyer's execution of the warrant resulted in the seizure of Appellant's cell phone. A forensic examination of the device yielded two videos depicting child pornography.

Appellant was arrested and charged with two counts each of possession of child pornography and dissemination of child pornography, in addition to one count of criminal use of a communication facility. Appellant filed a pre-trial suppression motion arguing that the search warrant issued to Detective Beyer lacked sufficient particularity and was unconstitutionally overbroad. *See* Omnibus Pre-Trial Motion, 9/25/20, at ¶¶ 16-34. Specifically, Appellant argued the warrant violated Article I, § 8 of the Pennsylvania Constitution by permitting the seizure of "all data" contained on the devices identified in the warrant: "[T]he issuance of the warrant improperly entitled law enforcement to search and seize data pertaining to a vast array of Defendant's personal information . . . without any qualifying requirement that it relate to the investigation at hand." *Id*. at ¶ 30.

At the suppression hearing, Appellant conceded that there was probable cause to believe that the device contained child pornography, but argued that

the breadth of the search authorized by the warrant was not limited to such evidence and, thus, was violative of the Pennsylvania Constitution:

> THE COURT: Let me ask. I think it's clear we have probable cause to believe this cell phone contained child porn.
>
> [DEFENSE ATTORNEY]: Absolutely.
>
> THE COURT: So how would you word the warrant?
>
> [DEFENSE ATTORNEY]: I would include language that would limit to qualify the search for the items to be search and seized as any images or videos containing child pornography or minors in explicit sexual conduct.
>
> THE COURT: And isn't that what was downloaded in this case? The only thing he actually downloaded was videos containing child pornography.
>
> [DEFENSE ATTORNEY]: Well, it was a shared video on Facebook [M]essenger apparently.
>
> THE COURT: Okay. But are you indicating that he doesn't have the right to search the entire phone to look for those items?
>
> [DEFENSE ATTORNEY]: Certainly . . . because there's a – there's a distinction between the search and the seizure. A controlled search, yes, if there is qualifying language to allow that type of search, yes. The seizure of all data of all personal message – and we're talking about a vast amount of data that –
>
> THE COURT: But he – he didn't seize all that.
>
> [DEFENSE ATTORNEY]: That's what the search warrant permitted him to do so.

N.T. Suppression Hearing, 10/20/20, at 5-6. Overall, Appellant's position was that the warrant was overbroad because there was "no qualifying language to account for any non-criminal use of his cell phone." *Id*. at 7-8.

- 4 -

After entertaining memoranda on the issue, the trial court denied Appellant's suppression motion relying largely upon this Court's holding in **Commonwealth v. Green**, 204 A.3d 469 (Pa.Super. 2019), *affirmed*, 265 A.3d 541 (Pa. 2021).[3]  **See** Order and Opinion, 12/11/20, at 1-8.  Prior to trial, the Commonwealth withdrew one count each of possession of child pornography and dissemination of child pornography.  On March 1, 2020, a jury found Appellant guilty of the aforementioned charges.  Thereafter, the trial court imposed the sentence noted above.  **See** Order, 5/24/21, at 1-3.  On June 18, 2021, Appellant filed a timely notice of appeal.  Both Appellant and the trial court have complied with the obligations of Pa.R.A.P. 1925.

Appellant has presented a single issue for our consideration:  "Whether the trial court erred in not suppressing evidence obtained pursuant to a search warrant that lacked particularity and was unconstitutionally overbroad." Appellant's brief at 6.  Our standard of review in addressing a challenge to the denial of a suppression motion is "limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct."  **Commonwealth v. Jones**, 988 A.2d 649, 654 (Pa. 2010).  To the extent that an appeal turns on allegations of legal error, "the suppression court's legal conclusions are not

---

[3]  Our Supreme Court granted allowance of appeal in this case on January 25, 2021.  **See Commonwealth v. Green**, 243 A.3d 1293 (Pa. 2021).  During the pendency of this appeal, this Court's holding was affirmed.  **See Commonwealth v. Green**, 265 A.3d 541, 555 (Pa. 2021).

- 5 -

binding on an appellate court," as it is this Court's "duty to determine if the suppression court properly applied the law to the facts." *Id*. Our scope of review is "to consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the suppression record as a whole." ***Commonwealth v. Shaffer***, 209 A.3d 957, 968-69 (Pa. 2019). When the issue on appeal relates to a suppression ruling, this Court may only review the record from the suppression hearing while excluding evidence elicited at trial. ***See Commonwealth v. Yandamuri***, 159 A.3d 503, 516 (Pa. 2017).

As noted above, this issue arises under Article I, § 8 of the Pennsylvania Constitution, which provides that "no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause . . . ." PA. CONST., Art. I, § 8. Our Supreme Court has delineated the protections of this passage, as follows:

> It is a fundamental rule of law that a warrant must name or describe with particularity the property to be seized and the person or place to be searched. . . . The particularity requirement prohibits a warrant that is not particular enough and a warrant that is overbroad. These are two separate, though related, issues. A warrant unconstitutional for its lack of particularity authorizes a search in terms so ambiguous as to allow the executing officers to pick and choose among an individual's possessions to find which items to seize. This will result in the general "rummaging" banned by the [F]ourth [A]mendment. A warrant unconstitutional for its overbreadth authorizes in clear or specific terms the seizure of an entire set of items, or documents, many of which will prove unrelated to the crime under investigation . . . An overbroad warrant is unconstitutional because it authorizes a general search and seizure.

- 6 -

The language of the Pennsylvania Constitution requires that a warrant describe the items to be seized "as nearly as may be. . . ." The clear meaning of the language is that a warrant must describe the items as specifically as is reasonably possible. This requirement is more stringent than that of the Fourth Amendment, which merely requires particularity in the description. The Pennsylvania Constitution further requires the description to be as particular as is reasonably possible. . . . Consequently, in any assessment of the validity of the description contained in a warrant, a court must initially determine for what items probable cause existed. The sufficiency of the description must then be measured against those items for which there was probable cause. Any unreasonable discrepancy between the items for which there was probable cause and the description in the warrant requires suppression. An unreasonable discrepancy reveals that the description was not as specific as was reasonably possible.

*Commonwealth v. Orie*, 88 A.3d 983, 1002–03 (Pa.Super. 2014).

Our Supreme Court has discussed the specific considerations governing search warrants respecting electronic devices like cell phones, as follows:

Because a cell phone often contains even more personal information than a home, it logically follows that a warrant should be required to search the contents of a cell phone, just as a warrant is required to search the contents of a home. This rationale, however, does not support the conclusion that, once obtained, a warrant to search a digital device should be held to a higher overbreadth standard than a warrant to search a home simply because of the former's storage capacity. Of course . . . our Constitution requires that **all** warrants, including warrants to search a digital space, (1) describe the place to be searched and the items to be seized with specificity and (2) be supported by probable cause to believe that the items sought will provide evidence of a crime. In applying this standard, courts must be cognizant of the privacy interests associated with personal electronic devices. However, just as with a search of a home and other spaces where an individual maintains a privacy interest, if there is probable cause that evidence of a crime will be found within an electronic device, that evidence should not be shielded simply because a defendant comingles it with personal information in a digital space with vast storage capacity. This is

particularly so when, like here, the nature of the crime is electronic or internet based.

*Commonwealth v. Green*, 265 A.3d 541, 553 (Pa. 2021) ("*Green*"). Thus, warrants to search digital spaces must describe "'as nearly as may be those items for which there is probable cause.'" *Id*. (quoting *Commonwealth v. Grossman*, 555 A.2d 896, 899 (Pa. 1989)).

However, search warrants must also "be read in a common sense fashion and should not be invalidated by hypertechnical interpretations." *Commonwealth v. Rega*, 933 A.2d 997, 1012 (Pa. 2007) (cleaned up). In light of the "fact-dependent nature" of claims of ambiguity and overbreadth in this context, our Supreme Court has held that "where the items to be seized are as precisely identified as the nature of the activity permits and an exact description is virtually impossible, the searching officer is only required to describe the general class of the item he is seeking." *Green*, *supra* at 550.

The "natural starting place in assessing the validity of the description contained in a purportedly overbroad warrant is to determine for what items probable cause existed." *Id*. at 551 (citing *Commonwealth v. Johnson*, 240 A.3d 575, 587 (Pa. 2020)). Probable cause is determined by examining the totality of the circumstances and consists of making a "'practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id*. (quoting *Commonwealth v. Torres*, 764 A.2d 532, 537-38 (Pa. 2001)). At the suppression hearing, Appellant

acknowledged there was probable cause to conclude his cell phone contained evidence relating to the possession and dissemination of child pornography. *See* N.T. Suppression Hearing, 10/20/20, at 5-6.

However, with specific reference to search warrants seeking evidence of child pornography, our Supreme Court has observed that "self-limiting language" specifying that officers can only search for "evidence relating to the possession and/or distribution of child pornography" is "critical" in preventing "indiscriminate or discretionary" searches. *Green*, *supra* at 552. In this case, Appellant maintains the warrant was overbroad and lacked particularity because it did not contain any such limitations. *See* Appellant's brief at 14 ("[I]n our case the detective had free reign to search anywhere and for anything within the cell phone, while in *Green* they were specifically particular in that it could only be searched for evidence relating to the possession and/or distribution of child pornography."). We disagree.

The application for a search warrant filed in this case described the items to be searched for and seized, as follows:

> The seizure and off-site forensic examination of all data contained within any cellular telephones and mobile electronic devices, including tablet or laptop computers, owned, used, and/or possessed by [Appellant], whereever they may be found. The biometric data of [Appellant], to include fingerprints and facial features, to be used to unlock mobile devices if located.
>
> **The Affidavit of Probable Cause is incorporated herein by reference.**

Application for Search Warrant, 6/24/20, at 1 (emphasis added). The description of the items to be searched in this application is quite broad and, by itself, is constitutionally problematic in that there is no limitation based upon the alleged crimes. However, Detective Beyer's affidavit of probable cause was explicitly incorporated into the application. The affidavit solely requested the issuance of a warrant seeking "evidence relating to the possession and/or distribution of child pornography[.]" Affidavit of Probable Cause, 6/24/20, at ¶ 6. Specifically, it included the following verbiage:

> [T]here is probable cause to believe that Title 18 § 6312, which, among other things, make it a crime for any person to knowingly produce, distribute, receive or possess child pornography, or attempted to do the above acts, has been violated, and that the property, evidence, and instrumentalities of these offenses, listed in the items to be searched for and seized if found, are located at 243 Steinwehr Ave, Gettysburg[,] PA, 17325 or on the person of Kamran Saleem. I request that a search warrant issue to allow for the search and seizure of such property and evidence.

*Id*. at ¶ 7.

With these documents in mind, the trial court addressed the issues of suppression and overbreadth, as follows:

> As in *Green*, [Appellant] was under investigation for the possession and/or distribution of child pornography and a search warrant was issued. In both cases, an electronic device was seized and searched and files appearing to contain child pornography were seized. Both cases also included an incorporated affidavit of probable cause which contained similar language, authorizing the search and seizure for property and evidence related to violations of Title 18 § 6312, which make it a crime for any person to knowingly produce, distribute, receive or possess child pornography.

> Detective Beyer's search warrant and incorporated affidavit provided sufficient facts for the magisterial district judge to reasonably determine that the search warrant was for the purpose of seizing cellular devices and authorizing the search of the data on such devices for evidence of child pornography.

Trial Court Opinion, 12/11/20, at 5-6. Accordingly, the particularity and validity of the at-issue warrants hangs upon whether or not we may view the application and the affidavit of probable cause in conjunction with one another.

On this point, we find our Supreme Court's holding in *Commonwealth v. Carlisle*, 534 A.2d 469 (Pa. 1987) to be instructive. In that case, law enforcement officers executed a search warrant on a building containing three separate apartments. Although the police only possessed information of illicit gambling in "Apartment One," the description of the place to be searched in the warrant referred to the building as a whole without designating a specific apartment. The affidavit of probable cause attached to the application, however, clearly evinced police were only investigating alleged law-breaking in Apartment One. The defendant challenged the validity of the warrant based upon this alleged lack of particularity.

Our Supreme Court framed this issue, as follows:

> [T]he question which arises is whether the affidavit . . . may be used to augment the description of place listed on a search warrant. Analytically, the two most obvious approaches to this question are either to construe the affidavit and the warrant together, or to construe only the warrant, without regard to the affidavit. In this case, if the two writings were construed together, the place would be described with sufficient particularity, since the affidavit plainly states that the phones suspected of being used to conduct a lottery were located in Apartment One, not elsewhere. If the documents are to be construed separately,

- 11 -

however, the warrant would fail for lack of particularly since the [description] does not contain any reference to Apartment One, but instead appears to authorize a search of the entire building.

*Carlisle*, *supra* at 472 (cleaned up).

Ultimately, the Court adopted a "practical, common-sense" approach in considering "whether the place to be searched is specified with sufficient particularity," which focused upon "all circumstances set forth in the affidavit." *Id*. (citing *Illinois v. Gates*, 462 U.S. 213, 238-39 (1985); *Commonwealth v. Gray*, 503 A.2d 921, 925 (Pa. 1987)). On the merits, the Court determined that it was appropriate to consider the information contained in the affidavit of probable cause in assessing particularity:

> Applying the "practical, common-sense" rule of *Gates* and *Gray* to this case, it is our view that the police officers conducting the search in this case would be aware of the exact location to be searched. They knew that a suspected lottery operation was being conducted at [the building] by use of telephones which were located in Apartment One at that address. Common sense suggests that this information does not authorize a search of Apartments Two or Three, and, in fact, the only search conducted was a search of Apartment One. Had any location other than Apartment One been searched based on the affidavit in this case, any items seized from other locations would have been suppressed as having been seized outside the authority of the warrant.
>
> [W]hat appears to have happened is that the police officer applying for the warrant inadvertently omitted the apartment number from the box on the form which called for it. Were there reason to believe that this omission was not inadvertent, or were there reason to believe that police officers conducting the search would not reasonably know where the search was to be conducted, our view of this case would be quite different.

*Carlisle*, *supra* at 472-73 (cleaned up).

- 12 -

We find **Carlisle** controls in these circumstances. Accordingly, we agree with the trial court that we may view both the application **and** the affidavit of probable cause in assessing the scope of the warrant. **Id**. Indeed, this Court recently relied upon **Carlisle** to reach a similar result in a fairly analogous case. **See Commonwealth v. Saia**, 248 A.3d 511 (Pa.Super. 2021) (unpublished memorandum at 1-6). In **Saia**, a search warrant was issued for a property based upon a tip from NCMEC that a Skype profile had been sharing child pornography over the Internet service associated with the property. While the warrant referred only to the residence located at that address, the supporting affidavit of probable cause referred to both the main residence and its exterior buildings. Ultimately, an electronic device was recovered from an exterior building and was found to contain child pornography. The trial court in **Saia** suppressed this evidence based upon an alleged lack of particularity in the warrant. On appeal, this Court reversed:

> [U]nder **Carlisle**, we are compelled to hold that the suppression court erred by failing to consider the [a]ffidavit in defining the scope of the warrant. When read in conjunction with the [a]ffidavit, it is obvious that the target of the warrant included buildings on the named property exterior to [d]efendant's residence in which the at-issue evidence was discovered, not just the residence itself.

**Id**. at 5. Although **Saia** is not binding precedent, we may cite it for its persuasive value since it was filed after May 1, 2019. **See** Pa.R.A.P. 126(b). Furthermore, the holding in **Saia** confirms that **Carlisle** continues to animate

the state of our law concerning particularity and overbreadth under Article I, § 8 of the Pennsylvania Constitution.[4]

Turning to the instant case, we find no merit to Appellant's claim. While the basic description provided in the search warrant approved by the MDJ in Appellant's case did not mirror that approved by our Supreme Court in **Green**, Detective Beyer's affidavit of probable cause included sufficiently limiting language to restrict the ambit of the search warrant to evidence of child pornography. Pursuant to **Carlisle**, we read these documents in conjunction with one another to assess the scope of the search warrant. **See also** Pa.R.Crim.P. 230(B) ("The issuing authority, in determining whether probable cause has been established, may not consider any evidence **outside the affidavits**." (emphasis added)). As such, the search warrant in this case would not (and did not) permit the kind of rummaging or generalized search that the Pennsylvania Constitution forbids. **See Green**, **supra** at 555 ("The warrant only allowed the officers to search for evidence of that particular crime. They could not indiscriminately rummage through any and all files as Appellant suggests, but rather could only conduct a digital forensic search . . . for evidence of child pornography."). Accordingly, no relief is due.

---

[4] We recognize that in **Commonwealth v. Saia**, 248 A.3d 511 (Pa.Super. 2021) (unpublished memorandum at 6 n.7), this Court "respectfully" invited our Supreme Court to revisit its ruling in **Commonwealth v. Carlisle**, 534 A.2d 469 (Pa. 1987). However, no such reconsideration has yet taken place. Accordingly, we remain bound by this precedent and the result it compels.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/13/2022